IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| WILLIAM EPP, | ) | 8:18CV418 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| SCOTT FRAKES, BRAD HANSEN, DIANE SABATKA-RINE, SCOTT BUSBOOM, DOUG PETERSON, CHUCK GLEN, MICHAEL KENNEY, and BRIAN GAGE, | ) | |
| Defendants. | ) | |

Plaintiff, William Epp ("Epp"), an inmate at the Tecumseh State Correctional Center, filed his Complaint (Filing 1) on September 6, 2018. In a Memorandum and Order (Filing 8) entered on November 5, 2018, the court found on initial review that the claims alleged by Epp in his Complaint were improperly joined because they were asserted against completely different Defendants and concerned unrelated transactions or occurrences. *See* Fed. R. Civ. P. 20(a)(2). Epp was given 30 days in which to file an Amended Complaint to correct this pleading defect.

Epp filed an Amended Complaint (Filing 9) on November 19, 2018. The court now conducts an initial review of the Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. SUMMARY OF AMENDED COMPLAINT

Epp's Amended Complaint is brought only against Defendant Doug Petersen, the Nebraska Attorney General, who is sued in his individual and official capacities. Epp seeks only declaratory and injunctive relief. He requests the court to declare that "Neb. Rev. Stat. § 25-1233 et seq. is unconstitutional on its face and as-applied,

because it violates the Equal Protection Clause of the Fourteenth Amendment," and to enjoin Defendant "from continuing to enforce 25-1233" (Filing 9, pp. 4-5).

The challenged statute, although part of Nebraska's code of civil procedure, also applies to criminal cases. *See Rains v. State*, 114 N.W.2d 399, 405 (Neb. 1962); *see also State v. Stott*, 503 N.W.2d 822, 830-33 (Neb. 1993) (holding § 25-1233 does not violate compulsory process clauses of Sixth Amendment to U.S. Constitution and Article I, § 11, of Nebraska Constitution), *disapproved on other grounds by State v. Johnson*, 589 N.W.2d 108 (Neb. 1999). The statute provides in relevant part:

> A person confined in any prison in this state shall, by order of any court of record, be produced for oral examination in the county where he or she is imprisoned. In all other cases his or her examination must be by deposition.

Neb. Rev. Stat. § 25-1233(1).

Epp claims § 25-1233 "is unconstitutional because it deprives a criminal defendant on trial in a county where a prison under the control of the Nebraska Department of Correctional Services is not located, of an opportunity to have a person subpoenaed to testify in that defendant's trial" (Filing 9, p. 4, ¶ 12). Specifically, Epp contends "[t]he fact that criminal defendants in counties in which prisons are located can obtain an order from the court in that county to produce prisoners to give testimony at trial, but criminal defendants in counties where the prison is not located cannot, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 1, sections 3 and 11 of the Nebraska Constitution, of those prisoners charged where the prison is not located" (Filing 9, p. 4, ¶ 14).

Epp alleges Defendant Peterson "represented the State against Epp when the constitutionality of 25-1233 was presented to the state courts" (Filing 9, p. 3, ¶ 8), and since Epp's criminal conviction "has refused to take corrective measures to have

[§ 25-1233] invalidated" (Filing 9, p, 3, ¶ 7) despite having an ethical obligation as a prosecutor "to inform the appropriate authorities of after-acquired or other information that cast doubt on the correctness of the conviction (Filing 9, pp. 3-4, ¶ 10). Epp further alleges he "will seek an injunction requiring the defendant to request that said statute be invalidated, which would prospectively abate the alleged violation" (Filing 9, pp. 1-2, ¶ 4).

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Id.*, at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF CLAIMS

Liberally construing Epp's Amended Complaint, he asserts both a federal constitutional claim under authority of 42 U.S.C. § 1983, and a state constitutional claim.[1] Because a plaintiff may not bring a state claim under the aegis of § 1983, this court's ability to entertain Epp's equal protection challenge to the Nebraska statute based on provisions of the Nebraska Constitution cannot be predicated on 28 U.S.C. § 1331 (original jurisdiction),[2] but instead must depend on 28 U.S.C. § 1367(a) (supplemental jurisdiction).[3] *See Preston v. City of Pleasant Hill*, 642 F.3d 646, 650 (8th Cir. 2011); *Stamm v. Cty. of Cheyenne*, 326 F. Supp. 3d 832, 843 (D. Neb. 2018).

---

[1] To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "State officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief." *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir.1997); *Ramos v. Nebraska*, 396 F. Supp. 2d 1053, 1058 (D. Neb. 2005) (holding that § 1983 claim could proceed against Nebraska Attorney General to the extent plaintiff sought prospective declaratory or injunctive relief, but not otherwise). However, "[a]mong courts that have reached this issue, the trend and weight of authority is that injunctive relief is not available against officials sued in their individual capacities." *Gillpatrick v. Sabatka-Rine*, 902 N.W.2d 115, 130 & n. 52 (Neb. 2017) (citing cases). Because the court concludes Epp does not have standing to bring the § 1983 claim, there is no need to decide whether Nebraska law permits this type of action to be brought against the Nebraska Attorney General.

[2] Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[3] Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Unless this court has original jurisdiction over the § 1983 claim, it cannot exercise supplemental jurisdiction over the state claim. *See City of Kansas City v. Yarco Co.*, 625 F.3d 1038, 1041 (8th Cir. 2010) ("Supplemental jurisdiction requires at least one claim within the district court's original jurisdiction.").

"Federal courts have authority under the Constitution to decide legal questions only in the course of resolving 'Cases' or 'Controversies.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018); U. S. Const. Art. III, § 2. The "irreducible constitutional minimum" of standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016)). The plaintiff must "clearly ... allege facts demonstrating" each element at the pleading stage. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To establish an injury in fact, a plaintiff must show an injury that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560, n. 1). A "concrete" injury must be "*de facto* "; that is, it must actually exist. *Id.*

To the extent Epp brings an equal protection challenge regarding the application of Neb. Rev. Stat. § 25-1233(1) in his own criminal trial, proof that he was convicted and sentenced to prison clearly will satisfy the first element for Article III standing (*i.e.*, injury in fact). But Epp cannot rely upon alleged violations of the rights of other criminal defendants in bringing this § 1983 action. *See SOB, Inc. v. Cty. of Benton*, 317 F.3d 856, 864 (8th Cir. 2003) ("Ordinarily, a party may not facially challenge a law on the ground that it would be unconstitutional if applied to someone else.").

With respect to the second element (*i.e.*, causation), Epp's theory of the case appears to be that his conviction stands, and he remains incarcerated, because the Nebraska Attorney General has a breached his continuing duty to inform "appropriate authorities" that § 25-1233(1) is unconstitutional and to "take corrective measures to have the statute invalidated." The court will assume for purposes of initial review that Epp's legal theory has merit. *See Warth*, 422 U.S. at 500 ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). ("It is crucial ... not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive.").

However, as to the third and final element (*i.e.*, "redressability"), the court does not find it likely that the present action will result in Epp's conviction being set aside or his sentence being vacated. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Because the Nebraska Attorney General does not have any authority to override the state court judgment that sent Epp to prison, "[w]hether [Epp's alleged injury] would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989). Article III standing is lacking in such a case. *See id.*; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."); *Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990) ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case."). "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation marks and citation omitted).

Actually, from a review of the Nebraska Supreme Court's opinion affirming Epp's convictions and sentences, *State v. Epp*, 773 N.W.2d 356 (Neb. 2009), of which this court takes judicial notice,[4] it is safe to say that a favorable decision in the present action would not benefit Epp.[5] The opinion shows Epp was charged with robbery of a Casey's General Store in Wymore, Nebraska, use of a deadly weapon to commit the robbery, and possession of a deadly weapon by a felon. The jury found Epp guilty of robbery and possession of a deadly weapon by a felon, but not guilty of the third charge. Epp was sentenced as a habitual criminal by the District Court of Gage

---

[4] Federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996); *see also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (federal courts may take judicial notice of judicial opinions and public records).

[5] The United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). "He must seek federal habeas corpus relief (or appropriate state relief) instead. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). This line of cases establishes that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82 (emphasis in original). A declaration that Epp was denied due process or the equal protection of the laws when he was not permitted to present live testimony from prisoners who were being held outside of the county where his criminal trial took place would *not* necessarily demonstrate the invalidity of his conviction or the length of his sentence. *See, e.g., Simmons v. O'Brien*, 77 F.3d 1093, 1094-95 (8th Cir. 1996) (state prisoner's § 1983 action against police officers for coercing his confession was not *Heck*-barred because admission of involuntary confession is "trial error" which could be harmless, so favorable judgment in § 1983 action would not necessarily demonstrate invalidity of plaintiff's criminal conviction).

County, Nebraska, to a term of 60 years imprisonment on each of the two convictions, to be served consecutively.

Epp claimed on appeal, among other assignments of error, that the trial court erred in denying his motion to require the Nebraska Department of Correctional Services to transport three out-of-county prisoners whom Epp had subpoenaed to appear at his trial in Gage County. Epp asserted that two of the witnesses (Wes Blessing and Bryon Forney, who were both imprisoned at the Diagnostic and Evaluation Center in Lancaster County) would testify that the third witness (Paul Mick, who was imprisoned at the Nebraska State Penitentiary in Lancaster County) had confessed to them that he had committed the robbery of the Wymore Casey's. The trial court denied the motion to transport based on Neb. Rev. Stat. § 25-1233(1), but permitted the prisoner witnesses to be deposed.

Forney testified in his deposition that Blessing told Forney in Mick's presence that Blessing was in jail because he had robbed a Casey's in Beatrice. Forney testified that Mick responded to Blessing's statement by stating that Mick had "robbed the Casey's too." Forney testified that Mick did not specify the location of the Casey's that he robbed and did not say anything more about the matter. Blessing testified in his deposition that he, Mick, and Forney were talking and Mick told them "about an armed robbery that he committed." Blessing testified that he "cut [Mick] off at that point" and "let him know that [Blessing] did an armed robbery in Beatrice." Blessing testified that Mick did not give further details about the armed robbery but that Mick "specifically said that he did an armed robbery." *Id.* at 369. Mick, in his deposition, denied telling Blessing and Forney that he had committed an armed robbery and specifically denied robbing the Wymore Casey's. *Id.* at 371.

Epp argued on appeal, as he does now, "that § 25-1233 violates a defendant's right to equal protection because it distinguishes between defendants based on whether their trials are held in counties where prisons are located." *Id.* at 367. The Nebraska Supreme Court did not reach this constitutional issue, however, because it

determined that the trial court had properly excluded the deposition testimony of Forney and Blessing as inadmissible hearsay, and that any error in excluding Mick's testimony was harmless. *Id.* at 369-72.

Although the Nebraska Supreme Court did not reach the constitutional issue, its rejection of Epp's assignment of error regarding the trial court's exclusion of the prisoner witness testimony will preclude him from proving that a declaration by this court that Neb. Rev. Stat. § 25-1233 is unconstitutional will redress his alleged injury (*i.e.*, his conviction and imprisonment). That is to say, the Supreme Court's rulings that Blessing's and Forney's testimonies were not admissible under the residual hearsay exception, and that the exclusion of Mick's testimony was, at most, harmless error, will bar any further action by Epp seeking to have his conviction set aside on grounds that Nebraska law did not permit live testimony from these prisoners.

Under issue preclusion (collateral estoppel), "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Simmons*, 77 F.3d at 1095 (holding that state prisoner's § 1983 action against police was barred by issue preclusion because his claims of excessive force and racial slurs, which allegedly resulted in a coerced confession, were necessarily litigated and decided against Simmons at the state suppression hearing).

This court must give a state court judgment the same preclusive effect it would be given under the law of the state where it was rendered. 28 U.S.C. § 1738; *W.F.M., Inc. v. Cherry Cnty.*, 279 F.3d 640, 643 (8th Cir. 2002); *Jacob v. Cotton*, No. 8:17CV215, 2017 WL 3206313, at *3 (D. Neb. July 27, 2017). The following elements are required for collateral estoppel to apply under Nebraska law: (1) the identical issue was decided in a prior action, (2) there was a judgment on the merits that was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Cunningham v. Prime Mover, Inc.*, 567 N.W.2d

178, 181 (Neb. 1997); *Jacob*, 2017 WL 3206313, at *3; *Keup v. Phillips*, No. 8:15CV113, 2015 WL 5022695, at *2-3 (D. Neb. Aug. 24, 2015).

If Epp were to bring another action in state or federal court[6] seeking to void his conviction based on the alleged unconstitutionality of Neb. Rev. Stat. § 25-1233, it is clear that all four elements of collateral estoppel would be satisfied. The state courts have determined that the testimony of the prisoner witnesses was either inadmissible hearsay or of no evidentiary value; the Nebraska Supreme Court's decision was a final judgment on the merits; Epp was the defendant/appellant; and Epp had a full and fair opportunity to litigate the issues in the state trial and appellate courts.

IV. CONCLUSION

Epp does not have standing to challenge the constitutionality of Neb. Rev. Stat. § 25-1233 because he cannot establish that a favorable decision would be likely to redress his alleged injury (*i.e.*, his conviction for armed robbery and imprisonment). In fact, it is clear the statute did not play a part in Epp's conviction or sentencing, even though he was not permitted to present live testimony from out-of-county prisoners. Epp cannot bring a § 1983 action based on the statute's potential application to other criminal defendants. Because further amendment of the pleadings would be futile, this action will be dismissed without prejudice for lack of jurisdiction.

---

[6] The court notes that on July 9, 2018, Epp filed another action in this court, *William Epp v. Brad Hansen*, Case No. 8:18CV323, in which he challenges his state-court conviction on various grounds, including the alleged unconstitutionality of Neb. Rev. Stat. § 25-1233. Although docketed as a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, Epp's initial filing in that case was designated by him as a Rule 60 motion. In a Memorandum and Order entered on November 21, 2018, this court ruled that Epp could not challenge his state-court conviction by means of a Rule 60 motion, and informed Epp that his filing would be treated as a habeas petition unless he withdrew the filing 30 days. Epp was also directed to file an amended habeas petition in an approved form, signed under penalty of perjury, if he elected to proceed with the action.

IT IS THEREFORE ORDERED:

1. This action is dismissed without prejudice for lack of jurisdiction.

2. Judgment will be entered by separate document.

DATED this 7th day of December, 2018.

                                          BY THE COURT:

                                          s/ *Richard G. Kopf*
                                          Senior United States District Judge